**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

———————————————————

**BAP NO. PR 17-018**

———————————————————

**Bankruptcy Case No. 13-06718-BKT**
**Adversary Proceeding No. 15-00207-BKT**

———————————————————

**LUIS DIESEL SERVICES, INC.,**
**Debtor.**

———————————————————

**NOREEN WISCOVITCH RENTAS, Chapter 7 Trustee,**
**Plaintiff-Appellant,**

v.

**MAPFRE PRAICO INSURANCE COMPANY and**
**PUMA ENERGY CARIBE, LLC,**
**Defendants-Appellees.**

———————————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Brian K. Tester, U.S. Bankruptcy Judge)**

———————————————————

**Before**
**Hoffman, Cary, and Panos,**
**United States Bankruptcy Appellate Panel Judges.**

———————————————————

**Rafael A. González Valiente, Esq., on brief for Plaintiff-Appellant.**
**José A. Sánchez-Girona, on brief for Defendant-Appellee,**
**MAPFRE Praico Insurance Company.**
**Paul J. Hammer, Esq., on brief for Defendant-Appellee, Puma Energy Caribe, LLC.**

———————————————————

**May 4, 2018**

———————————————————

**Per Curiam.**

The chapter 7 trustee, Noreen Wiscovitch Rentas (the "Trustee"), appeals from two

bankruptcy court orders: (1) the March 28, 2017 order dismissing the above-referenced

adversary proceeding due to the Trustee's failure to comply with a discovery deadline (the

"Dismissal Order"); and (2) the May 15, 2017 order denying reconsideration of the Dismissal

Order (the "Denial of Reconsideration").   For the reasons discussed below, we **REVERSE** both

orders and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

Luis Diesel Services, Inc. (the "Debtor") commenced a chapter 11 bankruptcy case in the

U.S. Bankruptcy Court for the District of Puerto Rico on August 16, 2013.   The case was later

converted to one under chapter 7, and the Trustee was appointed.

### A.    Complaint

In August 2015, the Trustee commenced an adversary proceeding against MAPFRE

Praico Insurance Company ("MAPFRE") and Puma Energy Caribe, LLC ("Puma") with a two-

count complaint (the "Complaint").   The Trustee alleged that on July 5, 2013, the Debtor

transferred $95,325.00 to MAPFRE to obtain a $200,000.00 bond.   She further alleged that

MAPFRE never provided the bond but, instead, transferred the funds to Puma, in payment of an

antecedent debt.   Accordingly, in Count I, the Trustee asserted a cause of action for fraudulent

transfer under § 548,[1] and in Count II, she alleged a preferential transfer under § 547.   In her

prayer for relief, the Trustee asked the bankruptcy court for judgment in her favor in the amount

---

[1]   Unless otherwise noted, all references to "Bankruptcy Code" or to specific statutory sections shall be
to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.   All references to "Rule"
are to the Federal Rules of Civil Procedure and all references to "Bankruptcy Rule" are to the Federal
Rules of Bankruptcy Procedure.

of $95,325.00, together with costs, expenses, and disbursements including, but not limited to, attorney's fees.

### B. The Answers

Both Puma and MAPFRE filed answers to the Complaint in which they asserted multiple defenses to the Trustee's claims. In its answer, MAPFRE requested that the bankruptcy court assess attorney's fees and costs against the Trustee for her alleged "obstinacy" in pursuing the adversary proceeding. In support of this request, MAPFRE asserted it had attempted to forestall litigation by providing the Trustee with documentation to substantiate its position, but its efforts were to no avail.

### C. Discovery and the December 2, 2015 Scheduling Order

On December 2, 2015, the bankruptcy court held an initial pretrial conference which resulted in the entry of the following scheduling order:

> Parties in discovery proceedings. They requested one-hundred and twenty days (120) for the discovery proceedings. 30 days thereafter to file dispositive motions. If the discovery is done and ready to file the same, do not wait until the cut[-]off date. The cut-off date is 4/30/16 for dispositive motions. The Clerk to follow up to see what is pending by this date.

In other words, the court set March 31, 2016 as the deadline for the completion of discovery (the "discovery deadline").[2]

On February 8, 2016, Puma served discovery requests on the Trustee which included interrogatories, requests for production of documents, and requests for admission ("Puma's Discovery Request"). Shortly thereafter, on February 23, 2016, MAPFRE served a similar

---

[2]  Although the bankruptcy court did not explicitly identify March 31, 2016 as the discovery deadline, the parties do not dispute that this was the court's meaning when it stated "[t]hey requested one-hundred and twenty days (120) for the discovery proceedings." In addition, in the Dismissal Order, the court made it clear that it intended to require the completion of discovery within 120 days—i.e., March 31, 2016. See infra at 7-8

discovery request on the Trustee ("MAPFRE's Discovery Request"). The Trustee did not serve

a response or object to any part of Puma's Discovery Request or MAPFRE's Discovery Request

(collectively, the "Discovery Requests") within the 30-day period prescribed by the Federal

Rules of Civil Procedure (March 9, 2016 for Puma, and March 24, 2016 for Puma),[3] or even

before the expiration of the discovery deadline, March 31, 2016. The Trustee did not serve any

discovery request on her own behalf before the expiration of the discovery deadline.

On April 1, 2016—the day after the discovery deadline expired—the Trustee filed a

motion for extension of time (the "Extension Motion"), seeking an additional 60 days (until May

30, 2016) to "comply with the [o]rder of December 2, 201[5]." In support, she represented she

was still reviewing the Debtor's documents in order to properly respond to the outstanding

Discovery Requests, and her attorneys were in the process of relocating. The Trustee also

represented that Puma had consented to the requested extension.[4]

On April 4, 2016, MAPFRE filed an objection to the Extension Motion, in which it

argued: (1) MAPFRE had provided the Trustee with documentation to support its defenses as

early as September 2015, thereby giving her ample time to review those documents; (2) the

requested extension would unduly delay the proceedings; (3) not only had the Trustee failed to

respond to MAPFRE's Discovery Request by the discovery deadline, she had failed to initiate

her own discovery; and (4) the Trustee had failed to establish good cause either for the requested

---

[3]  See Fed. R. Civ. P. 33(b)(2), as incorporated by Fed. R. Bankr. P. 7033 (prescribing 30-day period for responses to interrogatories); see also Fed. R. Civ. P. 34(b)(2)(A), as incorporated by Fed. R. Bankr. P. 7034 (providing 30-day period for responding to production requests); Fed. R. Civ. P. 36(a)(3), as incorporated by Fed. R. Bankr. P. 7036 (providing requests for admission are deemed admitted unless answered or objected to within 30 days).

[4]  Notwithstanding this representation, the record does not reflect compliance with Rule 29(b) (made applicable by Bankruptcy Rule 7029), requiring "court approval" of a stipulation extending the time for discovery if that stipulation "would interfere with the time set for completing discovery." Fed. R. Civ. P. 29(b).

4

extension or for filing the Extension Motion after the expiration of the discovery deadline.
MAPFRE asked the court to deny the Extension Motion, rule that the period for completion of
discovery had expired, and order the Trustee to respond to discovery forthwith.

On that date, MAPFRE also filed a motion seeking an order declaring that the matters
addressed in its requests for admission were "deemed admitted" in light of the Trustee's failure
to answer or object to those requests ("MAPFRE's Motion for Order").[5]   Puma filed a similar
motion, asserting that the matters set forth in its requests for admission should also be deemed
admitted due to the Trustee's failure to respond to them ("Puma's Motion for Order").

On April 7, 2016, the bankruptcy court entered an order denying the Extension Motion
"for the reasons set forth in" MAPFRE's objection.

### D.   Motion to Dismiss

On April 12, 2016, Puma filed a "Motion to Dismiss Pursuant to Federal Rules of Civil
Procedure 37(b)(2) & 41(b) and for Attorney's Fees, or, in the Alternative, for Plaintiff to be
Precluded from Supporting its Claims" (the "Motion to Dismiss").   Puma complained that the
Trustee had failed to respond to either of the outstanding Discovery Requests or to conduct any
of her own discovery by the discovery deadline.   Puma further asserted it had provided the
Trustee with "key documents . . . mere weeks after the Complaint was filed," yet the Trustee
"s[at] on [her] rights for nearly a year . . . ."   Accordingly, Puma asked the bankruptcy court to:
(1) dismiss the Complaint with prejudice and order the Trustee to pay its costs and attorney's

---

[5]   Rule 36(a), made applicable to adversary proceedings by Bankruptcy Rule 7037, provides for this
remedy.   See Fed. R. Civ. P. 36(a).

fees pursuant to Rule 37(b) and Rule 41.  Alternatively, Puma requested that the bankruptcy court preclude the Trustee from supporting her claims.[6]

Thereafter, MAPFRE filed a motion seeking authorization to join the Motion to Dismiss (the "Motion to Join").[7]

### E.      Trustee's Objection to Motions for Order Deeming Matters to be Admitted

On April 14, 2016, two weeks after the expiration of the discovery deadline, the Trustee filed a single objection to MAPFRE's Motion for Order and Puma's Motion for Order ("Objection to Motions for Order") and attached as exhibits to that objection her responses to the Discovery Requests and what appear to be copies of documents identified in those responses. As grounds for her opposition, she maintained that Puma's attorney had agreed to an extension of the discovery deadline, but she had inadvertently neglected to obtain MAPFRE's consent to such an extension.   In addition, she urged the court to consider a remedy that was less "severe" than an order deeming the matters contained in the respective requests for admission admitted. The Trustee asked the court to deny both MAPFRE's Motion for Order and Puma's Motion for Order and to grant her 30 days to submit a certified translation of the relevant portions of the transcript of the § 341 meeting of creditors.

MAPFRE replied one week later, arguing, in part, that the Trustee had not justified her failure to answer the requests for admission.   MAPFRE asked the court to overrule the Trustee's objection to MAPFRE's Motion for Order and declare that the matters contained in its requests

---

[6]  Although Rule 37(b)(2)(A)(ii) provides for this remedy, Puma cited Rule 37(b)(2)(C).

[7]  It does not appear from the docket that the bankruptcy court ruled on the Motion to Join.  See In re Colón Martinez, 472 B.R. 137, 139 n.4 (B.A.P. 1st Cir. 2012) (stating the Panel may take judicial notice of the bankruptcy court's docket).

for admission were deemed admitted. Puma later filed a motion seeking to join MAPFRE's reply.

### F. Trustee's Objection to Motion to Dismiss

On April 26, 2016, the Trustee filed an objection to the Motion to Dismiss (the "Objection to Motion to Dismiss"), arguing the "law favors disposition of litigation on its merits and dismissal is [a] harsh sanction to be resorted to only in extreme cases." (emphasis omitted) (citation omitted). She further contended that she had requested an extension of the discovery deadline in order to obtain and evaluate the Debtor's financial information and reiterated that her attorneys' relocation rendered compliance with the discovery deadline difficult. The Trustee concluded by asserting that: (1) the need for additional time to produce evidence did not amount to a failure to comply with court orders; (2) even if there was a failure to comply with court orders, dismissal was too harsh a sanction and there were "other remedies that must be used before dismissing a case"; (3) there was no "repeated or willful failure to meet deadlines" which would justify dismissal; and (4) Puma and MAPFRE failed to demonstrate "actual prejudice."

### G. Dismissal of the Adversary Proceeding

In the months that followed, the parties engaged in further motions practice, with each filing a motion for summary judgment. The next significant development in the adversary proceeding did not occur until March 28, 2017, when the bankruptcy court granted the Motion to Dismiss without a hearing.

In the Dismissal Order, the bankruptcy court reasoned as follows:

[T]here is no doubt that Plaintiff voluntarily failed to timely answer and deliver the requested set of interrogatories, requests for production of documents and, requests for admission[ ] served by Co-Defendants. In fact, Plaintiff did not only fail to answer and deliver the aforementioned interrogatories, it also failed to expressly object or to request a protective order against the same. See, e.g., Allahverdi v. Regents of the Univ. of N.M., 228 F.R.D. 696, 698 (D.N.M. 2005);

7

see also Casson Const[r]. Co. [v]. Armco Steel Corp., 91 F.R.D. 376, 378 (D.[ ] Kan. 1980).

In light of the information [con]tained in the record, on December 2, 2015, this court granted all the parties herein "one hundred and twenty days" in order to conduct discovery. During said period, Co-Defendants, Puma and MAPFRE, served their "Requests for Admission[ ]" upon Plaintiff pursuant to Fed. R. Bankr. P. 7036, and conducted their discovery in accordance with the timetable established at the initial scheduling conference. Whereas, Plaintiff failed to comply with this court's order, and instead decided to file a request for an extension of time after the discovery period had ended without just cause. [Dkt. No. 20]. Despite Puma and MAPFRE's effort, **Plaintiff failed to provide the Co-Defendant[s] the requested information pertinent to their discoveries**.[8] In all aspects, it is a well established principle that litigants that ignore a case-management deadline do so at their own risk. Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). In accordance to the latter, and as of this date, **Plaintiff has still not provided the requested documents nor has [s]he given a legitimate excuse for h[er] failure to do so. Plaintiff's neglect and ineffective attention, has given this court no other option** but to determine that the appropriate sanction is dismissal of Plaintiff's cause of action due to the unnecessary delay and unwanted expenses caused by [her] own doing. See[,] e.g.[,] Colon v[.] Blades, 268 F.R.D. 137, 140 (D.P.R. 2010); see also United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993).

WHEREFORE, IT IS ORDERED that Puma's *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 37(b)(2) & 41(b) and for Attorney's Fees, or in the Alternative, for Plaintiff to be Precluded from Supporting its Claims* [Dkt. No. 27] is GRANTED, as to the dismissal with prejudice of the Complaint. Each party shall bear its own attorney's fees and costs.

(emphasis added). The bankruptcy court entered a Judgment on the same date, granting the

Motion to Dismiss and incorporating the terms of the Dismissal Order by reference.[9]

---

8  The bankruptcy court appears to have overlooked the discovery responses the Trustee appended as exhibits to her Objection to Motions for Order.

9  In the concluding paragraph of the Dismissal Order, the court did not specifically reference MAPFRE's Motion to Join or MAPFRE's subsequent filing of its own Motion to Dismiss. Nor did the court specifically reference MAPFRE's Motion to Dismiss in the Judgment. However, at the outset of the Dismissal Order, the court recited the Motion to Join among the matters before it. Additionally, the court stated that it was dismissing the "Plaintiff's cause of action," and concluded by stating the Complaint was dismissed with prejudice, all suggesting that the adversary proceeding was dismissed in its entirety—i.e., as to *both* MAPFRE and Puma. Moreover, the court's language "evidence[s] its intent that the [Dismissal O]rder . . . represents the final decision in the case." See Bankers Trust Co. v. Mallis, 435 U.S. 381, 387 (1978) (where the Supreme Court looked to the language of the district court's judgment of

8

### H.     Reconsideration Motion

On April 6, 2017, the Trustee filed a "Motion Requesting Order Setting Aside

[Dismissal] Order Entered on March 28, 2017" (the "Reconsideration Motion"), seeking relief

"pursuant to Rule 59(e) or Rule 60."   In it, she largely repeated the arguments she had

previously asserted, namely that: (1) dismissal was too harsh a remedy under the circumstances

but, rather, was warranted only where the failure to prosecute was "willful" or where the

noncompliance caused a delay of years; (2) "extreme misconduct" or "intentional failure" was

absent in this case; (3) Puma had consented to an extension of time; and (4) she had produced the

evidence requested, only 14 days after the expiration of the discovery deadline.   As justification

for the missed deadline she again pointed to her attorneys' relocation.   Additionally, citing

Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246 (1st Cir. 1999), the Trustee asserted that

dismissal was, at best, premature, as the law in the First Circuit requires courts to "suitably

forewarn[ ]" litigants of the consequences of "intransigence" before dismissing a case.   See id.

at 252 (citation omitted).

### I.     Objections to Reconsideration Motion

On April 20, 2017, Puma and MAPFRE each filed an objection to the Reconsideration

Motion.   In its objection, Puma argued, among other things, that: (1) the Trustee failed to meet

"the heavy burden" of justifying reconsideration; (2) Puma timely provided all documents

requested, yet never received any "adequate response" from the Trustee; (3) the Trustee's failure

to timely request an extension was not excused by her attorneys' relocation; (4) reconsideration

would be prejudicial to Puma; and (5) the bankruptcy court committed no manifest error in

---

dismissal to support a conclusion that the judgment was a sufficient expression of finality.   This is
corroborated by the subsequent entry of the Judgment.

dismissing the case with prejudice, "as no exceptional circumstances" existed which might justify the Trustee's "pattern of conduct."

In its objection, MAPFRE asserted that the Reconsideration Motion should be viewed within the framework of Bankruptcy Rule 9023, as it was filed within 14 days of the entry of the Dismissal Order. Accordingly, MAPFRE contended that: (1) the Trustee failed to establish a manifest error of law or present newly discovered evidence as required by that rule; and (2) Bankruptcy Rule 9023 "does not provide a vehicle for a party to undo its own procedural failures"; and (3) the Trustee had failed to show "good cause" as to why she could not satisfy the discovery deadline. MAPFRE rejected the Trustee's assertion that she missed the discovery deadline by only 14 days, claiming the Trustee had not conducted any discovery whatsoever in this case, and that the deadline for responding to MAPFRE's Discovery Request was determined by the Federal Rules of Civil Procedure, not the December 2, 2015 order. Thus, by MAPFRE's calculation, the Trustee's responses were actually 21 days late (and 36 days late with respect to Puma's Discovery Request).

### J. Denial of Reconsideration

On May 15, 2017, without a hearing, the bankruptcy court entered the Denial of Reconsideration, concluding the Trustee had failed to satisfy the standard for reconsideration under Rule 59(e). The court reasoned, in pertinent part, that the Trustee "rehash[ed] the same arguments that were already considered and found lacking . . . ." Moreover, the court adopted "in their entirety" the arguments raised by Puma and MAPFRE in their respective objections to the Reconsideration Motion.

Case: 17-16 Document: 00117328847 Page: 11 Date Filed: 05/04/2018 Entry ID: 2151030

**K.      Notice of Appeal**

The Trustee commenced this appeal on May 26, 2017.   In her notice of appeal, the Trustee stated that she was appealing from both the Dismissal Order and the Denial of Reconsideration.

## JURISDICTION

"A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits," even if the litigants do not raise the issue.   Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 458 (B.A.P. 1st Cir. 2017) (citing Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 546-47 (B.A.P. 1st Cir. 2005)).   "Pursuant to 28 U.S.C. §§ 158(a) and (b), the Panel may hear appeals from 'final judgments, orders, and decrees,' § 158(a)(1), or 'with leave of the court, from interlocutory orders and decrees.' § 158(a)(3)."   Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998); see also Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692, 1695 (2015) (discussing the Panel's jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a)).   "[A]n order granting a motion to dismiss an adversary proceeding is a final order."   Privitera v. Curran (In re Curran), 554 B.R. 272, 278 (B.A.P. 1st Cir. 2016) (citation omitted), aff'd, 855 F.3d 19 (1st Cir. 2017).   Because the order dismissing the adversary proceeding is final, so, too, is the order denying reconsideration.   See Hamilton v. Appolon (In re Hamilton), 399 B.R. 717, 720 (B.A.P. 1st Cir. 2009) (stating "[a]n order denying reconsideration is final if the underlying order was final and together they end the litigation on the merits").   Therefore, we have jurisdiction to consider both orders on appeal.

## STANDARD OF REVIEW

"Appellate courts apply the clearly erroneous standard to findings of fact and de novo
review to conclusions of law." Belser v. Nationstar Mortg., LLC (In re Belser), 534 B.R. 228,
233 (B.A.P. 1st Cir. 2015) (citing Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d
267, 269 (1st Cir. 2010)).  A bankruptcy court's dismissal of an adversary proceeding for failure
to comply with a discovery order is reviewed for abuse of discretion. Bushay v. McDonnell (In
re Bushay), 327 B.R. 695, 701 (B.A.P. 1st Cir. 2005) (citations omitted).  Orders denying
reconsideration are likewise reviewed for abuse of discretion. In re Hamilton, 399 B.R. at 720-
21 (citation omitted).  "An abuse of discretion occurs when a relevant factor deserving
significant weight is overlooked, or when an improper factor is accorded significant weight, or
when the court considers the appropriate mix of factors, but commits a palpable error of
judgment in calibrating the decisional scales." R & B Transp., LLC v. U.S. Dep't of Labor,
Admin. Review Bd., 618 F.3d 37, 44-45 (1st Cir. 2010) (citation omitted).  In addition, "[a]buse
of discretion occurs when a judge makes a . . . clearly erroneous finding of fact." Eldridge v.
Gordon Bros. Grp., L.L.C., 863 F.3d 66, 86 (1st Cir. 2017) (citations omitted) (internal
quotations omitted).

## DISCUSSION

I.      **Standard Governing Dismissal for Noncompliance with Discovery Order**

        A.      **Rule 37**

        Rule 37(b)(2), made applicable to adversary proceedings by Bankruptcy Rule 7037,

provides: "If a party or a party's officer, director, or managing agent . . . fails to obey an order to

12

provide or permit discovery . . . , the court where the action is pending may issue further just

orders."[10]   Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Bankr. P. 7037; see also In re Bushay, 327 B.R.

at 703.   Rule 37(b)(2) sets forth a variety of permissible sanctions, including an order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).[11]

"Sanctions under Rule 37(b) are appropriate once it is established that a party has failed

to comply with a valid discovery order."   In re Bushay, 327 B.R. at 703 (citing Anderson v.

Beatrice Foods Co., 900 F.2d 388 (1st Cir. 1990)).   "Dismissal with prejudice for violation of

---

[10]   In this case, the Panel considers the court-ordered March 31, 2016 discovery deadline to be a "discovery order" within the meaning of Rule 37.   Even if the Panel were to construe the court-ordered deadline as a scheduling order (rather than a discovery order), the outcome would remain unchanged, as Rule 16(f) (made applicable to adversary proceedings by Bankruptcy Rule 7016) provides that the court may issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."   See Fed. R. Civ. P. 16(f)(1)(C).

[11]   Rule 37(d) goes on to authorize the court to impose sanctions for failure to serve answers to interrogatories, or respond to a request for inspection, stating: "The court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."

[discovery] orders is well within the arsenal of the trial judge." Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 4 (1st Cir. 2006) (citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002); Robson v. Hallenbeck, 81 F.3d 1, 4 (1st Cir. 1996) (explaining that successive violations of court scheduling orders can justify dismissal with prejudice)); see also Torres-Vargas v. Pereira, 431 F.3d 389, 392 (1st Cir. 2005) ("[A] federal district court's venerable power to sanction a party who repeatedly fails to comply with court-imposed deadlines cannot be doubted.") (citations omitted).

## 1. Policy Considerations

Deterrence is a consideration supporting the sanction of dismissal for failure to comply with discovery orders. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976); Damiani v. R.I. Hosp., 704 F.2d 12, 15 (1st Cir. 1983). As the Supreme Court explained:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

Nat'l Hockey League, 427 U.S. at 643.

## 2. The Factors—Procedural and Substantive

Choosing the appropriate sanction "def[ies] mechanical rules." Robson, 81 F.3d at 2 (considering failure to obey scheduling order). "[D]ismissal should not be viewed either as a sanction of first resort or as an automatic penalty for every failure to abide by a court order." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). Instead, "the choice of an appropriate

---

Fed. R. Civ. P. 37(d)(1)(A)(ii). "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(3).

14

sanction must be handled on a case-by-case basis." Id. (citations omitted). "[D]ismissal for failure to comply with discovery orders . . . should not be ordered without thoughtful consideration of all the factors involved." Damiani, 704 F.2d at 17; see also Mulero-Abreu v. P.R. Police Dep't, 675 F.3d 88, 93 (1st Cir. 2012) ("The totality of the circumstances should be considered when assessing the appropriateness of a discovery sanction.") (citation omitted). Those factors include "the trial court's need to maintain order and prevent undue delay, the prejudice (if any) to the offender's adversary, and the salutary policy favoring the disposition of cases on the merits." Young, 330 F.3d at 81 (citations omitted). Other important substantive considerations identified by the First Circuit include "'the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice . . . to the operations of the court, and the adequacy of lesser sanctions . . . .'" Benitez-Garcia, 468 F.3d at 5 (quoting Robson, 81 F.3d at 2-3).

In addition to the foregoing substantive considerations, the First Circuit also considers a "procedural dimension . . . which addresses concerns such as notice, opportunity to be heard, and the court's explanation for its choice of sanction." Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007) (citing Benitez-Garcia, 468 F.3d at 5-7; Robson, 81 F.3d at 3). As the First Circuit explained, "'fairness requires that some limits be placed on [the] use' of a sanction of this severity." Benitez-Garcia, 468 F.3d at 5 (citation omitted).

### B.     First Circuit's View of Rule 37 Dismissals

The First Circuit "has long recognized that dismissal either for failure to comply with discovery orders or lack of prosecution is a matter within the discretion of the [ ] court and the claim of abuse of discretion has not received a sympathetic ear . . . ." Damiani, 704 F.2d at 17.

In fact, in <u>Damiani</u>, the First Circuit observed that since 1964 it had "upheld [such] dismissals

in all cases but one."   <u>Id.</u> (collecting cases).   The <u>Damiani</u> court followed suit, affirming

dismissal after taking into account: the plaintiff's failure to respond to the defendants' discovery

request; its failure to timely respond to a motion to compel compliance; its unilateral extension

of deadlines without court approval; and its eventual, "woefully inadequate" discovery

responses.   <u>Id.</u> at 13-14.   The court reasoned:

> Not only was there willful disobedience of the court's order, but the plaintiff's
> attorney arrogated control of discovery to himself and changed the date of
> compliance to suit his own convenience and that of his client. . . .   We also note
> that there was no effort by plaintiff's counsel to move this case along.   He
> initiated no discovery and his only motions were to ask for extensions in which to
> reply to motions of the defendants.   The entire pattern of behavior by plaintiff's
> counsel casts a shadow on the bona fides of his client's case . . . .

<u>Id.</u> at 16 (footnote omitted).

A review of post-<u>Damiani</u> cases suggests that the appellant who challenges a trial court's

dismissal for failure to comply with a discovery order continues to bear a heavy burden in this

circuit.   In <u>Malloy v. WM Specialty Mortgage LLC</u>, 512 F.3d 23, 26-27 (1st Cir. 2008), for

example, the First Circuit concluded that dismissal was proper where discovery responses were

more than seven months overdue, there was no indication that the responses would have been

promptly provided absent dismissal, and the plaintiffs proffered no legitimate excuse for the

delay.   Similarly, the First Circuit ruled in <u>Torres-Vargas</u>, 431 F.3d at 393, there was no abuse

of discretion when the district court dismissed an action based on a docket which "reflect[ed]

that, from the very commencement of the action, the plaintiff dragged his heels and the district

court generously granted him extensions of divers kinds."   Likewise, the First Circuit discerned

16

no abuse of discretion in Serra-Lugo v. Mayaguez Consortium-Las Marias, 271 F.3d 5, 6 (1st

Cir. 2001), where the district court dismissed the case "after repeated violations of its orders and

after having warned plaintiff of the consequences of non-compliance."   The First Circuit again

affirmed the district court's dismissal as a sanction for failure to comply with discovery orders in

Spiller v. U.S.V. Laboratories, Inc., 842 F.2d 535, 537 (1st Cir. 1988), where the plaintiff

ignored court orders without justification or explanation on at least three different occasions and

twice received notice of the adverse consequences which would follow a failure to comply.

Additionally, in Spiller, the First Circuit rejected the plaintiff's argument that his failure to

comply was not willful or in bad faith, noting the record revealed a "history of foot-dragging."

Id.   Finally, in Farm Construction Services, Inc. v. Fudge, 831 F.2d 18, 21 (1st Cir. 1987), the

First Circuit affirmed the district court's dismissal of a case where the appellant "intentionally

disregarded court orders on repeated occasions and substituted its own judgment for that of the

court."

However, this does not mean the First Circuit uniformly "rubber-stamp[s]" the decisions

of the trial court.   Damiani, 704 F.2d at 17.   Rather, in each case, the circuit "consider[s] the

facts fully," recognizing that dismissal is "the death knell of the lawsuit."   Id.

Thus, in Benitez-Garcia, supra, the First Circuit reversed an order of dismissal imposed

as a discovery sanction for three missed deadlines.   See 468 F.3d at 7.   In so doing, the court

considered multiple factors, including: the absence of clear prejudice resulting from the

plaintiffs' delay; the absence of a pattern of flouting court orders; the length of delay (four

months, three months, and two and a half months, respectively); the district court's failure to

afford the plaintiffs an opportunity to oppose the motion for sanctions in accordance with the

court's local rules; and the district court's failure to weigh all of the appropriate factors, such as

17

Case: 17-16 Document: 00113284 Page: 18 Date Filed: 05/04/2018 Entry ID: 2101030

whether "a sanction as severe as dismissal with prejudice was needed or whether other sanctions might well have sufficed." Id. at 5-6. Moreover, the First Circuit reasoned: "'Ordinarily, the plaintiff is given an opportunity to explain [his noncompliance] or argue for a lesser penalty . . . .'" Id. at 7 (quoting Robson, 81 F.3d at 3).

## II. Analysis

On appeal, the Trustee offers the following arguments in favor of reversal: (1) Puma's counsel agreed to an extension of time to respond to the requests for admission; (2) she responded to the subject discovery requests, albeit 14 days after the expiration of the discovery deadline; (3) her failure, if any, was not willful; (4) Puerto Rico Local Bankruptcy Rule 7026 ("P.R. LBR 7026") establishes a procedure to follow in the event of a failure to cooperate or comply with the discovery plan which was not followed here; (5) courts should resort to dismissal only in extreme cases, and the violation here does not qualify as "extreme," particularly when properly factoring into the analysis that she responded to the subject discovery requests only two weeks after the expiration of the discovery deadline; and (6) she received no warning regarding the possibility of dismissal. These arguments vary widely in persuasiveness and strength.

The Trustee's argument that Puma agreed to an extension of the discovery deadline is easily dispatched. Courts require more than an adversary's consent to an extension in the event of a party's inability to comply with a court order—court approval is also required. See Damiani, 704 F.3d at 17; see also Sonoma V v. Sells (In re Sonoma V), 703 F.2d 429, 431 (9th

Cir. 1983) (stating "parties may not, by private agreement, extend the time for filing motions");

Fed. R. Civ. P. 29(b) (governing stipulations regarding discovery procedures).

The argument that P.R. LBR 7026 requires "the aggrieved party" to "file an affidavit

stating the facts which constitute the failure to cooperate" when there is a failure to comply with

a discovery plan also falls short because the Trustee neglected to make this argument below.

See Abdallah v. Bain Capital LLC, 752 F.3d 114, 120 (1st Cir. 2014) (stating arguments raised

for the first time on appeal are waived) (citations omitted).

The remaining arguments advanced by the Trustee that she actually responded to

discovery, her two-week delay did not qualify as extreme behavior, her conduct was not willful,

and she was entitled to a warning are addressed below.

### A.     The Trustee Actually Responded to Discovery

When it dismissed the adversary proceeding, the bankruptcy court stated that the Trustee

"failed to provide the Co-Defendant[s] the requested information pertinent to their discoveries"

and that, as of the date of the bankruptcy court's order, "Plaintiff has still not provided the

requested documents nor has [s]he given a legitimate excuse for h[er] failure to do so."[12]   The

bankruptcy court appears to have based its choice of dismissal as a sanction, at least in part, on

the clearly erroneous finding that the Trustee had not responded to discovery at all.   The record,

however, suggests otherwise.   The Trustee appended responses to the Discovery Requests to her

Objection to Motions for Order and the sufficiency of those responses went unchallenged.

Puma and MAPFRE complained only that the responses were late.   Thus, the bankruptcy court's

---

[12]   The court also stated:
   [T]here is no doubt that [the Trustee] voluntarily failed to timely answer and deliver the
   requested set of interrogatories, requests for production of documents and, requests for
   admissions served by Co-Defendants.   In fact, [the Trustee] did not only fail to answer
   and deliver the aforementioned interrogatories, [she] also failed to expressly object or to
   request a protective order against the same.

19

finding that the Trustee <u>never</u> responded to discovery is clearly erroneous on this record and, as such, constitutes an abuse of discretion requiring reversal. <u>See</u> <u>Eldridge</u>, 863 F.3d at 86.

> **B.**      **Substantive Considerations: Whether Dismissal is an Appropriate Rule 37 Sanction under the Circumstances**

The record clearly establishes that the Trustee missed the discovery deadline. Although the First Circuit has ruled that "a party's disregard of a court order is [itself] a paradigmatic example of extreme misconduct," <u>Torres-Vargas</u>, 431 F.3d at 393 (citations omitted), it has also cautioned that "'not . . . every breach of a scheduling order warrants dismissal.'" <u>Malot</u>, 478 F.3d at 44 (quoting <u>Tower Ventures, Inc.</u>, 296 F.3d at 46). The sanction of dismissal with prejudice "is reserved for cases of 'extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance.'" <u>Benitez-Garcia</u>, 468 F.3d at 4 (citation omitted). "[I]t has long been [the First Circuit's] rule that a case should not be dismissed with prejudice except when a plaintiff's misconduct is particularly egregious or extreme." <u>Id.</u> at 5 (internal quotations omitted) (citations omitted). Moreover, the First Circuit instructs us to examine the totality of the circumstances when assessing the propriety of dismissal. <u>Mulero-Abreu</u>, 675 F.3d at 93; <u>see also</u> <u>Benitez Garcia</u>, 468 F.3d at 5 (considering a variety of substantive factors, including the severity of violation, mitigating excuses, deliberateness, prejudice, and adequacy of other sanctions).

Applying these substantive considerations to this case, we discern an additional basis to reverse the bankruptcy court and remand for further consideration. Notwithstanding the Trustee's late discovery responses, the record reveals no pattern of delay or of repeatedly flouting court orders. Rather, it appears that there was only a single instance of noncompliance

Case: 17-18  Document: 00115284?  Page: 21  Date Filed: 05/04/2018  Entry ID: 2101030

with a discovery order.[13]   The law of this circuit does not support dismissal under these
circumstances.   See Benitez Garcia, 468 F.3d at 5 ("[W]e have been unable to find[ ] a case
from this circuit sustaining a dismissal with prejudice imposed solely for a single allegation of
noncompliance with a single . . . discovery order—at least where that noncompliance was never
brought to the plaintiffs' attention by the court prior to dismissing the case.").   Further, when
considering the length of the delay caused by the Trustee's noncompliance, measured in weeks
rather than years, the record reveals a lack of severity.   See id. at 6 (discussing the pertinence of
the length of delay).   The record establishes that the Trustee appended her discovery responses
to the Objection to Motions for Order only two weeks after the expiration of the discovery
deadline.[14]

Additionally, in order to assess the degree of prejudice to Puma and MAPFRE resulting
from the missed discovery deadline, we must view the Trustee's violation in context.   Here, as
of the date of the missed deadline, there was no trial date in view.   See id. at 5 (noting that
violating a pre-trial order on the eve of trial is a more serious infraction).   Thus, neither Puma
nor MAPFRE appear to have suffered serious prejudice with respect to their trial preparation,
despite MAPFRE's assertion to the contrary.   Prejudice to Puma is even less likely, given that
Puma had assented to the Trustee's Extension Motion.   Finally, nothing in the record suggests

---

[13]   In its objection to the Reconsideration Motion, MAPFRE argued that the Trustee also missed the April
30, 2016 deadline for filing dispositive motions.   While the Trustee did not file her motion for summary
judgment until June 1, 2016, the record also reflects that: (1) the Motion to Dismiss predated the
expiration of the deadline for filing dispositive motions and related only to the missed discovery deadline;
and (2) Puma and MAPFRE also filed their motions for summary judgment after the expiration of the
initial deadline for filing dispositive motions.

[14]   Even if we view the date of issuance of the respective Discovery Requests as the reference point for
measuring the delay, rather than the discovery deadline, the analysis is much the same.   Puma and
MAPFRE served the Discovery Requests on February 8, 2016 and February 23, 2016, respectively.

that the bankruptcy court considered the adequacy of lesser sanctions commensurate with the length of delay.  See id.

While we are mindful that the First Circuit has expressed that violation of a court order constitutes severe misconduct, this principle has not overshadowed that court's consideration of the totality of the circumstances when reviewing a Rule 37 dismissal.  See Damiani, supra. On this record, the bankruptcy court appears to have neglected consideration of the totality of the circumstances.[15]

### C.  Procedural Considerations: Whether the Trustee should have been Forewarned

A review of the record corroborates the Trustee's assertion that the court did not warn her about the potential consequences of failure to comply with the Discovery Requests.  Indeed, the December 2, 2015 order is silent regarding the possibility of dismissal in the event of noncompliance.

Although Rule 37 contains no warning requirement as a condition of its application, some courts have imposed such a requirement.  For example, in Okpala v. Computer Sciences Corp.,

---

[15]  Given this conclusion, it is not necessary for us to dissect the Trustee's argument that her conduct did not qualify as a "willful" failure to act.  We note, however, that while "willfulness" can be a mitigating factor to be considered in a Rule 37(b)(2) sanctions analysis, that factor is not dispositive.  In any event, the Trustee's professed lack of "intent" would not likely have tilted the scale in her favor absent the other factors discussed herein, as the record does not establish that she was either unable to satisfy the discovery deadline or that her failure to comply with that deadline was involuntary.  See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212 (1958) ("Rule 37 should not be construed to authorize dismissal of [a] complaint . . . when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of [the] petitioner."); see also Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I–Blackbird Bend Area, 933 F.2d 1462, 1468-69 (8th Cir. 1991) (stating that "'[w]illful as used in the context of a failure to comply with a court order . . . implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance'") (citation omitted).  The Trustee's proffered justification— that her attorneys were in the midst of a move—is insufficient alone to establish inability or involuntary conduct.  See Knox v. Palestine Liberation Org., 229 F.R.D. 65, 69 (S.D.N.Y. 2005) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)) (stating an "impending move . . . does not amount to a factor outside of [a party's] 'reasonable control'").

CSC, the U.S. Court of Appeals for the Fourth Circuit ruled: "We require district courts 'to provide explicit and clear notice when they intend to dismiss the plaintiff's action with prejudice' as a sanction for misconduct."   585 F. App'x 298, 298 (4th Cir. 2014) (citation omitted).   In the absence of a warning, the Fourth Circuit vacated the order of dismissal for "misconduct during discovery."   See id.   While the First Circuit has not explicitly imposed a warning requirement for dismissal pursuant to Rule 37, it *does* consider "the procedure by which the sanction was imposed."   Benitez-Garcia, 468 F.3d at 5; see also Malot, 478 F.3d at 44 (observing there is a "procedural dimension" to review of Rule 37 dismissals, which addresses, inter alia, "concerns such as notice"); Robson, 81 F.3d at 3 (considering the "procedural dimension" of dismissal and noting "the lack of warning sometimes mitigates" violation of a scheduling order); Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990) (stating where it is determined that "a noncompliant litigant has manifested a disregard" for court orders *and* has been "forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal") (internal quotations omitted) (citation omitted).   In so doing, the First Circuit has consistently pointed to the presence of a warning regarding the threat of dismissal when affirming a lower court's dismissal.   See, e.g., Serra-Lugo, 271 F.3d at 6; Spiller, 842 F.2d at 537; Ganapolsky v. Keltron Corp., 823 F.2d 700, 701 (1st Cir. 1987); see also Nat'l Hockey League, 427 U.S. at 641.

Consistent with First Circuit precedent, the Panel has previously accorded significance to the absence of a warning regarding the prospect of dismissal.   See, e.g., In re Bushay, 327 B.R. at 701.   Moreover, in In re Bushay, the Panel acknowledged the importance of the procedural dimension of Rule 37 sanctions when it stated "[a]lthough there is no per se requirement, notice and opportunity to be heard are desirable when sanctions are imposed and the sanction must

Case: 17-18 Document: 00113284 Page: 24 Date Filed: 05/04/2018 Entry ID: 2181030

comport with procedural due process requirements." Id. (citing Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir. 1991)). After noting, among other things, that the bankruptcy court duly warned the debtor of the consequences of failing to comply with the discovery order, the Bushay Panel affirmed the dismissal of the adversary proceeding. Id. at 702-03. In contrast, in In re Hamilton, 399 B.R. at 722, the Panel ruled that a dismissal for failure to comply with a 30-day case management deadline could not stand, where the bankruptcy court had failed to apprise the plaintiff that noncompliance might result in dismissal (and "no other factors" supported dismissal).

Here, the bankruptcy court's failure to apprise the Trustee that missing the discovery deadline might result in a sanction of dismissal renders the Dismissal Order "procedurally suspect." Id. As the Panel previously explained, "[s]uch a lack of warning holds the capacity for working unfairness, particularly in a case such as this where no other factors point toward the propriety of dismissal." Id.

In view of the foregoing, we conclude that the facts established on this record have more in common with Benitez-Garcia, supra, where the First Circuit reversed a dismissal order, than those cases (including Damiani, supra,) in which the First Circuit has affirmed Rule 37 dismissals.[16]

---

[16] Notwithstanding the Trustee's argument that the bankruptcy court abused its discretion under Rule 41 (governing dismissal for failure to prosecute), we do not analyze the bankruptcy court's choice of sanction within the framework of that rule. Rule 41 addresses "significantly different problems." Gonzalez v. P.R. Elec. & Power Auth., Civ. No. 89-0817 JP, 1990 WL 56186, at *3 (D.P.R. Mar. 30, 1990). As the Supreme Court stated:

> [W]hether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery by listing a variety of remedies which a court may employ as well as by authorizing any order which is "just." There is no need to resort to Rule 41(b), which appears in that part of the Rules concerned with trials and which lacks such specific references to discovery. . . .

**CONCLUSION**

The record reveals both substantive and procedural shortcomings in the bankruptcy court's choice of sanction.   In addition, the record before us does not support the bankruptcy court's finding that the Trustee never responded to the Discovery Requests.   As such, the Panel concludes that the bankruptcy court abused its discretion in dismissing the adversary proceeding with prejudice under Rule 37.

Given our conclusion that the Dismissal Order was itself an abuse of discretion, we do not need to go further.   It is unnecessary to address the bankruptcy court's denial of the Reconsideration Motion.   See In re Hamilton, 399 B.R. at 722 (declining to review order denying reconsideration after vacating order dismissing case).

For the foregoing reasons, the orders on appeal are **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion, including consideration of whether lesser sanctions are appropriate under the circumstances.

---

Reliance upon Rule 41, which cannot easily be interpreted to afford a court more expansive powers than does Rule 37, or upon 'inherent power,' can only obscure analysis of the problem before us.

Societe Internationale, 357 U.S. at 207 (citation omitted).

25